AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

### for the
Western District of Washington

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The SUBJECT PREMISES at 806 S. 39th Street,<br>Unit B, Tacoma Washington 98418<br>PERSON Christopher Anderson, XX/XX/1979 | )<br>)<br>)<br>)<br>)<br>) |

FILED _____ LODGED
_____ RECEIVED

DEC 17 2019

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

Case No. MJ19-5261

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
The SUBJECT PREMIES at 806 S. 39th Street, Unit B, Tacoma, WA 98418 and PERSON of Christopher Anderson as further described in Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. § 2252 (a)(2) | Receipt or Distribution of Child Pornography |
| Title 18, U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

✓ See attached Affidavit continued on the attached sheet

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Special Agent, George Long, DHS-ICE
*Printed name and title*

◉ The foregoing affidavit was sworn to before me and signed in my presence, or
◯ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  _____ 12/17/2019 _____

_____
*Judge's signature*

City and state:  Tacoma, Washington _____

Theresa L. Fricke, United States Magistrate Judge
*Printed name and title*

USAO: 2019R01205

**ATTACHMENT A**

**Description of the Property to be Searched**

a.      The physical address of the SUBJECT PREMISES is 806 S. 39th Street, Unit B, Tacoma, Washington 98418.  The SUBJECT PREMISES is more fully described as a unit within a three-unit apartment building situated on the southwest corner of Yakima Avenue and 39th Street.  The Hong Kong Super Market is located directly across the street from the apartment building.  The front of the building faces north and is panted beige with white trim.  The back and sides of the building are covered with a red brick facade.  Unit B is located near the northwest corner of the building.  It has a brown door that faces north that has the letter "B" is displayed on it.  The numbers "806" are displayed on front of the building on wooden pillars on located on the east and west side of the buildings.



ATTACHMENT A - 1
USAO #2019R01205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    The search is to include all rooms, attics, basements, or other areas located in Unit

20  B, any parking spaces, garages, or storage spaces attached to or specifically assigned to

21  Unit B, as well as any digital device(s) found therein.

22
23
24
25
26
27
28

ATTACHMENT A - 2
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

2               Description of Person to be Searched

3  The person to be searched, CHRISTOPHER MICHAEL ANDERSON, is a white male

4  who was born on XX/XX/1979.  He is approximately 5'7" tall and weighs approximately

5  125 pounds.

6

7

8

9

10

11

12

13



14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES and on the person of CHRISTOPHER MICHAEL ANDERSON.

1.      Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2.      Evidence of any associated email accounts, instant message accounts or other communications or digital storage such as cloud accounts.

3.      Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.      All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.      Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.      Any and all address books, names, lists of names, telephone numbers, and addresses of minors;

7.      Any and all diaries, notebooks, notes, non-pornographic pictures of children, and any other records reflecting personal contact or other activities with minors.

8.      Any non-digital recording devices and non-digital media capable of storing images and videos.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

9. Digital devices and/or their components, which include, but are not limited to:

a. Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above, including but not limited to computers, digital cameras, and smart phones;

b. Any digital devices used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

c. Any magnetic, electronic, or optical storage device capable of storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives, camera memory cards, media cards, electronic notebooks, and personal digital assistants;

d. Any documentation, operating logs and reference manuals regarding the operation of the digital device or software;

e. Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f. Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

10. Evidence of who used, owned or controlled any seized digital device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history;

11. Evidence of malware that would allow others to control any seized digital device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

ATTACHMENT B - 2
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   as evidence of the presence or absence of security software designed to detect malware;

2   as well as evidence of the lack of such malware;

3         12.    Evidence of the attachment to the digital device(s) of other storage devices

4   or similar containers for electronic evidence;

5         13.    Evidence of counter-forensic programs (and associated data) that are

6   designed to eliminate data from a digital device;

7         14.    Evidence of times the digital device(s) was used;

8         15.    Any other ESI from the digital device(s) necessary to understand how the

9   digital device was used, the purpose of its use, who used it, and when.

10

11  **The seizure of digital devices and/or their components as set forth herein is**

12  **specifically authorized by this search warrant, not only to the extent that such**
**digital devices constitute instrumentalities of the criminal activity described above,**

13  **but also for the purpose of the conducting off-site examinations of their contents for**
**evidence, instrumentalities, or fruits of the aforementioned crimes.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 3
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

# AFFIDAVIT

STATE OF WASHINGTON

COUNTY OF PIERCE

ss

I, George Long, being duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUNDS

1.      I am a Special Agent (SA) with the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Office of the Special Agent in Charge (SAC), Seattle, Washington. I have been employed as an HSI agent since September 2005.  HSI is responsible for enforcing customs and immigration laws, and federal criminal statutes of the United States.   As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography and material involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

2.      I am a graduate of the Federal Law Enforcement Training Center (FLETC), the ICE Special Agent Training Program, and have received further specialized training in the investigation of child pornography and child exploitation crimes.  I have also had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256(8)).  I have participated in the execution of previous search warrants, which involved child exploitation and/or child pornography offenses, and the search and seizure of computers, related peripherals, and computer media equipment.  I have worked with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children.  Prior to working for HSI, I was employed as a State Trooper by the Arizona Department of Public Safety for approximately nine years.

3.      I am submitting this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 806 S. 39th Street, Unit B, Tacoma, Washington 98418 (the "SUBJECT PREMISES"), and the person of CHRISTOPHER MICHAEL ANDERSON (the "SUBJECT PERSON"), more fully described in attachment A of this affidavit, for the property and items described in attachment B of this affidavit.

4.      The warrant would authorize a search of the SUBJECT PREMISES and the SUBJECT PERSON, and the seizure of items listed in attachment B, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography).

5.      The facts set forth in this affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience.

6.      Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation. I have set forth only the facts I believe are relevant to the determination of probable cause to believe evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) will be found in the SUBJECT PREMISES and on the person of CHRISTOPHER MICHAEL ANDERSON.

## SUMMARY OF PROBABLE CAUSE

7.      From my training and experience, I know that Kik Messenger, also known as KIK, is an instant messenger mobile application (app) for mobile devices from Kik Interactive.  KIK is available free of charge on iOS, Android, and Windows Phone

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 2
USAO #2019R01205

1 operating systems.  Among its features, KIK permits users to engage in one-on-one or

2 group chats, as well as share image and video files.  KIK was based and headquartered in

3 Waterloo, Ontario, Canada, until approximately October 2019, when it was acquired by

4 MediaLab.

5         8.      From my training and experience, I am aware that certain KIK users use

6 KIK's features to traffic images and videos of child pornography.  In order to combat this

7 activity, KIK employs the use of hash matching software to identify users who are

8 sharing child exploitation material using KIK's services.  A hash value can be analogized

9 to a "digital fingerprint."  The probability that any two files will have the same hash

10 value is extremely low, meaning that when two files have the same hash value, it is

11 virtually certain that they are identical.

12         9.      KIK utilizes the hash matching software, to run a hash value check against

13 every file sent within KIK, including those sent as part of private conversations.  When a

14 user sends a file with a hash value that matches a known child sexual abuse material hash

15 value, the account is banned. The KIK Trust and Safety Team receives a daily report of

16 all such hash matches.  When the company was headquartered in Canada, it had a

17 mandatory obligation to report these matches to the Royal Canadian Mounted Police

18 (RCMP). With each report, KIK provided some or all of the following information:

19      •  Subscriber data associated with the reported user;

20      •  Full conversation log that exists on the reporter's device, including timestamps

21         and Internet Protocol (IP) addresses, as well as text content;

22      •  Images/Videos associated

23                     **SUMMARY OF INVESTIGATION**

24       10.     HSI routinely investigates child exploitation leads received from the

25 RCMP.  These include leads resulting from the KIK reports made to the RCMP as

26 described above.  KIK reported to the RCMP all instances where its security team had

27 discovered child pornography exchanged or discussed via the KIK application.  Included

28 in the lead, there is normally profile data of the user, any text transcript if applicable, and

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 3
USAO #2019R01205

1   any files shared.  These leads are then forwarded to HSI Cyber Crimes Center, which

2   distributes the leads to the HSI field offices based on the geolocation of the associated

3   Internet Protocol (IP) address.

4         11.   In March 2019, HSI Seattle received information regarding KIK user

5   "FLASH325325" (the SUBJECT ACCOUNT) through the process described above. KIK

6   reported the SUBJECT ACCOUNT shared a file, with the hash value ending in "XIKH"

7   (the SUBJECT FILE) on February 18, 2019, at approximately 08:36:33 Universal

8   Coordinated Time (UTC), from the IP address 131.191.84.181 (the SUBJECT IP).  The

9   hash value of the SUBJECT FILE was identified via hash matching software as a child

10   exploitation image hash file.  The SUBJECT FILE was not viewed by KIK or the RCMP

11   to verify that it was in fact a child exploitation image.  Although the SUBJECT FILE was

12   provided by KIK and is in my possession as part of the lead information, I also have not

13   viewed the SUBJECT FILE.

14         12.   Subscriber information provided by KIK indicates the SUBJECT

15   ACCOUNT was created on February 2, 2019.  The user identified his/her first name as

16   "Element", his/her last name as "B", and his/her date of birth (DOB) as XX/XX/1979.

17   The subscriber's e-mail address was identified as "elementb916916@gmail.com".  IP

18   logs included with the subscriber information revealed that between February 4, 2019,

19   and February 18, 2019, the SUBJECT ACCOUNT regularly accessed the KIK

20   application via the SUBJECT IP and IP address 73.140.111.214.  Subsequent

21   investigation identified Click! Network as the internet service provider (ISP) to whom the

22   SUBJECT IP is assigned and Comcast as the ISP to whom address 73.140.111.214 is

23   assigned.

24         13.   I contacted the HSI Cyber Crimes Center and learned the hash value

25   associated with SUBJECT FILE is maintained in an HSI repository of known child

26   exploitation images.  I obtained a copy of this file (the REPOSITORY FILE), which has

27   a hash value identical to the SUBJECT FILE.  I viewed the REPOSITORY FILE and

28   describe it as follows:

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 4
USAO #2019R01205

This color image depicts a prepubescent female kneeling face down on a bed with her buttocks elevated in the air. Her buttocks are red and appear to have been struck by something. The child's anus and vagina are fully exposed and are the focal point of the image. Based on the child's small stature, lack of visible pubic hair, and lack of sexual development, I estimated she is approximately six to ten years of age.

14.     As noted above, because the REPOSITORY FILE[1] and the SUBJECT FILE have the same hash value, I know from my training and experience that it is virtually certain that the two files are the same.

15.     A DHS summons was served to Click! Network to obtain subscriber information for the account registered to or associated with the SUBJECT IP on or about February 5, 2019 at 09:53:45 UTC, through February 18, 2019 at 08:36:50 UTC. Click identified the subscriber as John Gross, with a service address at 3919 S. 19th Street, Tacoma, Washington. Open source internet checks revealed Park Rose Care Center is located at 3919 S, 19th Street, Tacoma, Washington. Their website indicates Park Rose Care Center is an assisted living community that offers nursing and long-term care services to their clients.

16.     A DHS summons was served to Comcast to obtain subscriber information for the account registered to or associated with IP address 73.140.111.214 on or about February 17, 2019 at 05:27:21 UTC, through February 18, 2019 at 03:44:50 UTC. Comcast identified the subscriber as T.Y., with a service address at 806 S. 39th Street, Unit B, Tacoma, Washington (the SUBJECT PREMISES).

17.     Searches conducted in law enforcement databases revealed that on August 28, 2019, CHRISTOPHER MICHAEL ANDERSON was issued a Washington driver license that identifies his address as 806 S. 39th Street, Unit B, Tacoma, Washington. Notably, the DOB listed on his driver license matched the DOB listed on the SUBJECT ACCOUNT. In November 2005, ANDERSON was found to have submitted finger prints

---

[1] A copy of this file is included with this application as Exhibit 1 and will be provided to the reviewing magistrate judge. Exhibit 1 will not be filed with this application but instead will remain in the custody of HSI so that it can be made available should it be relevant to any future litigation involving this search application.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 5
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  to the State of California as an applicant for employment at an elderly residential care
2  facility.

3      18.      A search of social media revealed ANDERSON has a Facebook account
4  under the name "Chris Anderson", and an Instagram account listed under
5  "element916916". A DHS summons was served to Facebook to obtain subscriber
6  information for Facebook accounts registered to or associated with e-mail address
7  elementb916916@gmail.com, and to obtain subscriber information for Instagram account
8  elementb916916. Facebook identified e-mail address elementb916916@gmail.com as
9  ANDERSON's "registered e-mail address" for his Facebook account. They identified the
10 subscriber of Instagram account elementb916916 as "ElementB" and the "registered e-
11 mail address" associated with this account as elementb916916@gmail.com.

12     19.      On October 31, 2019, I spoke with a Park Rose Care Center representative
13 who verified ANDERSON is employed at Park Rose Care Center. They also confirmed
14 internet service is available to all staff, residents, and guests, via Wi-fi.

15     20.      A DHS summons was served to Park Rose Care Center to obtain
16 ANDERSON's employment information and time cards documenting any hours he
17 worked on February 17, 2019, and February 18, 2019. The Park Rose Care Center
18 reported ANDERSON has been employed as a Certified Nursing Assistant since January
19 23, 2019, and is assigned to shift that starts at 10:30 p.m., and ends at 6:30 a.m. A
20 timecard was provided showing ANDERSON clocked in for work at 10:33 p.m. on
21 February 17, 2019 and clocked out at 3:30 a.m. on February 18, 2019. He clocked back
22 in at 4:02 a.m. and clocked out for good at 6:34 a.m.

23     21.      I accessed the website worldtimebuddy.com and used it to convert the
24 SUBJECT IMAGE'S upload time from UTC to Pacific Standard Time (PST). The
25 conversion revealed the SUBJECT IMAGE was uploaded on February 18, 2019, at
26 12:36:33 a.m. PST.

27     22.      On December 6, 2019, I conducted surveillance of the SUBJECT
28 PREMISES. At approximately 7:09 AM, I saw a silver Hyundai Sonata park in front of

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 6
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  the SUBJECT PREMISES that displayed Washington license plate BJF3433.  I saw

2  ANDERSON exit the vehicle, walk towards the apartments, and disappear from my sight.

3      23.      Checks conducted in law enforcement databases revealed Washington

4  license plate BJF3433 is registered to a 2014 Hyundai Sonata owned by T.Y. at 806 S.

5  39th Street, Unit B, Tacoma, Washington.

6      24.      Based on my investigation to date, it does not appear that there are any

7  residents of the SUBJECT PREMISES other than ANDERSON and T.Y.

8                          **TECHNICAL BACKGROUND**

9      25.      Based on my training and experience, when an individual communicates

10  through the Internet, the individual leaves an IP address which identifies the individual

11  user by account and ISP (as described above).  When an individual is using the Internet,

12  the individual's IP address is visible to administrators of websites they visit.  Further, the

13  individual's IP address is broadcast during most Internet file and information exchanges

14  that occur.

15      26.      Based on my training and experience, I know that most ISPs provide only

16  one IP address for each residential subscription.   I also know that individuals often use

17  multiple digital devices within their home to access the Internet, including desktop and

18  laptop computers, tablets, and mobile phones.  A device called a router is used to connect

19  multiple digital devices to the Internet via the public IP address assigned (to the

20  subscriber) by the ISP.  A wireless router performs the functions of a router but also

21  includes the functions of a wireless access point, allowing (wireless equipped) digital

22  devices to connect to the Internet via radio waves, not cables.  Based on my training and

23  experience, today many residential Internet customers use a wireless router to create a

24  computer network within their homes where users can simultaneously access the Internet

25  (with the same public IP address) with multiple digital devices.

26      27.      Based on my training and experience and information provided to me by

27  computer forensic agents, I know that data can quickly and easily be transferred from one

28  digital device to another digital device.  Data can be transferred from computers or other

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 7
USAO #2019R01205

1    digital devices to internal and/or external hard drives, tablets, mobile phones, and other

2    mobile devices via a USB cable or other wired connection.  Data can also be transferred

3    between computers and digital devices by copying data to small, portable data storage

4    devices including USB (often referred to as "thumb") drives, memory cards (Compact

5    Flash, SD, microSD, etc.) and memory card readers, and optical discs (CDs/DVDs).

6         28.     As outlined above, residential Internet users can simultaneously access the

7    Internet in their homes with multiple digital devices.  Also explained above is how data

8    can quickly and easily be transferred from one digital device to another through the use

9    of wired connections (hard drives, tablets, mobile phones, etc.) and portable storage

10   devices (USB drives, memory cards, optical discs).  Therefore, a user could access the

11   Internet using their assigned public IP address, receive, transfer or download data, and

12   then transfer that data to other digital devices, which may or may not have been

13   connected to the Internet during the date and time of the specified transaction.

14        29.     Based on my training and experience, I have learned that the computer's

15   ability to store images and videos in digital form makes the computer itself an ideal

16   repository for child pornography.  The size of hard drives used in computers (and other

17   digital devices) has grown tremendously within the last several years.  Hard drives with

18   the capacity of four (4) terabytes (TB) are not uncommon.  These drives can store

19   thousands of images and videos at very high resolution.

20        30.     Based on my training and experience, and information provided to me by

21   other law enforcement officers, I know that people tend to use the same user names

22   across multiple accounts and email services.

23        31.     Based on my training and experience, collectors and distributors of child

24   pornography also use online resources to retrieve and store child pornography, including

25   services offered by companies such as Google, Yahoo, Apple, and Dropbox, among

26   others.  The online services allow a user to set up an account with a remote computing

27   service that provides email services and/or electronic storage of computer files in any

28   variety of formats.  A user can set up an online storage account from any computer with

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 8
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  access to the Internet.  Evidence of such online storage of child pornography is often
2  found on the user's computer.  Even in cases where online storage is used, however,
3  evidence of child pornography can be found on the user's computer in most cases.

4       32.    As is the case with most digital technology, communications by way of
5  computer can be saved or stored on the computer used for these purposes.  Storing this
6  information can be intentional, i.e., by saving an email as a file on the computer or saving
7  the location of one's favorite websites in, for example, "bookmarked" files.  Digital
8  information can also be retained unintentionally, e.g., traces of the path of an electronic
9  communication may be automatically stored in many places (e.g., temporary files or ISP
10  client software, among others).  In addition to electronic communications, a computer
11  user's Internet activities generally leave traces or "footprints" and history files of the
12  browser application used.  A forensic examiner often can recover evidence suggesting
13  whether a computer contains wireless software, and when certain files under investigation
14  were uploaded or downloaded.  Such information is often maintained indefinitely until
15  overwritten by other data.

16       33.    Based on my training and experience, I have learned that producers of child
17  pornography can produce image and video digital files from the average digital camera,
18  mobile phone, or tablet.  These files can then be easily transferred from the mobile device
19  to a computer or other digital device, using the various methods described above.  The
20  digital files can then be stored, manipulated, transferred, or printed directly from a
21  computer or other digital device.  Digital files can also be edited in ways similar to those
22  by which a photograph may be altered; they can be lightened, darkened, cropped, or
23  otherwise manipulated.  As a result of this technology, it is relatively inexpensive and
24  technically easy to produce, store, and distribute child pornography.  In addition, there is
25  an added benefit to the child pornographer in that this method of production is a difficult
26  trail for law enforcement to follow.

27       34.    As part of my training and experience, I have become familiar with the
28  structure of the Internet, and I know that connections between computers on the Internet

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 9
USAO #2019R01205

1   routinely cross state and international borders, even when the computers communicating

2   with each other are in the same state.   Individuals and entities use the Internet to gain

3   access to a wide variety of information; to send information to, and receive information

4   from, other individuals; to conduct commercial transactions; and to communicate via

5   email.

6        35.   Based on my training and experience, I know that cellular mobile phones

7   (often referred to as "smart phones") have the capability to access the Internet and store

8   information, such as images and videos.  As a result, an individual using a smart phone

9   can send, receive, and store files, including child pornography, without accessing a

10   personal computer or laptop.  An individual using a smart phone can also easily connect

11   the device to a computer or other digital device, via a USB or similar cable, and transfer

12   data files from one digital device to another.  Moreover, many media storage devices,

13   including smartphones and thumb drives, can easily be concealed and carried on an

14   individual's person and smartphones and/or mobile phones are also often carried on an

15   individual's person.

16        36.   As set forth herein and in Attachment B to this Affidavit, I seek permission

17   to search for and seize evidence, fruits, and instrumentalities of the above-referenced

18   crimes that might be found at the SUBJECT PREMISES or on the SUBJECT PERSON,

19   in whatever form they are found.  It has been my experience that individuals involved in

20   child pornography often prefer to store images of child pornography in electronic form.

21   The ability to store images of child pornography in electronic form makes digital devices,

22   examples of which are enumerated in Attachment B to this Affidavit, an ideal repository

23   for child pornography because the images can be easily sent or received over the Internet.

24   As a result, one form in which these items may be found is as electronic evidence stored

25   on a digital device.

26        37.   Based upon my knowledge, experience, and training in child pornography

27   investigations, and the training and experience of other law enforcement officers with

28

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 10
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  whom I have had discussions, I know that there are certain characteristics common to

2  individuals who have a sexualized interest in children and depictions of children:

3       a.    They may receive sexual gratification, stimulation, and satisfaction

4  from contact with children; or from fantasies they may have viewing children engaged in

5  sexual activity or in sexually suggestive poses, such as in person, in photographs, or other

6  visual media; or from literature describing such activity.

7       b.    They may collect sexually explicit or suggestive materials in a

8  variety of media, including photographs, magazines, motion pictures, videotapes, books,

9  slides, and/or drawings or other visual media.  Such individuals often times use these

10  materials for their own sexual arousal and gratification.  Further, they may use these

11  materials to lower the inhibitions of children they are attempting to seduce, to arouse the

12  selected child partner, or to demonstrate the desired sexual acts.  These individuals may

13  keep records, to include names, contact information, and/or dates of these interactions, of

14  the children they have attempted to seduce, arouse, or with whom they have engaged in

15  the desired sexual acts.

16       c.    They often maintain any "hard copies" of child pornographic

17  material that is, their pictures, films, video tapes, magazines, negatives, photographs,

18  correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of

19  their home or some other secure location.  These individuals typically retain these "hard

20  copies" of child pornographic material for many years, as they are highly valued.

21       d.    Likewise, they often maintain their child pornography collections

22  that are in a digital or electronic format in a safe, secure and private environment, such as

23  a computer and surrounding area.  These collections are often maintained for several

24  years and are kept close by, often at the individual's residence or some otherwise easily

25  accessible location, to enable the owner to view the collection, which is valued highly.

26       e.    They also may correspond with and/or meet others to share

27  information and materials; rarely destroy correspondence from other child pornography

28  distributors/collectors; conceal such correspondence as they do their sexually explicit

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 11
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  material; and often maintain lists of names, addresses, and telephone numbers of

2  individuals with whom they have been in contact and who share the same interests in

3  child pornography.

4         f.     They generally prefer not to be without their child pornography for

5  any prolonged time period.  This behavior has been documented by law enforcement

6  officers involved in the investigation of child pornography throughout the world.

7         g.     E-mail itself provides a convenient means by which individuals can

8  access a collection of child pornography from any computer, at any location with Internet

9  access.  Such individuals therefore do not need to physically carry their collections with

10  them but rather can access them electronically.   Furthermore, these collections can be

11  stored on email "cloud" servers, which allow users to store a large amount of material at

12  no cost, without leaving any physical evidence on the users' computer(s).

13      38.    In addition to offenders who collect and store child pornography, law

14  enforcement has encountered offenders who obtain child pornography from the internet,

15  view the contents and subsequently delete the contraband, often after engaging in self-

16  gratification.  In light of technological advancements, increasing Internet speeds and

17  worldwide availability of child sexual exploitative material, this phenomenon offers the

18  offender a sense of decreasing risk of being identified and/or apprehended with quantities

19  of contraband. This type of consumer is commonly referred to as a 'seek and delete'

20  offender, knowing that the same or different contraband satisfying their interests remain

21  easily discoverable and accessible online for future viewing and self-gratification.  I

22  know that, regardless of whether a person discards or collects child pornography he/she

23  accesses for purposes of viewing and sexual gratification, evidence of such activity is

24  likely to be found on computers and related digital devices, including storage media, used

25  by the person.  This evidence may include the files themselves, logs of account access

26  events, contact lists of others engaged in trafficking of child pornography, backup files,

27  and other electronic artifacts that may be forensically recoverable.

28

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 12
USAO #2019R01205

39.     Given the above-stated facts, and based on my knowledge, training and experience, along with my discussions with other law enforcement officers who investigate child exploitation crimes, I believe that ANDERSON is the owner of the SUBJECT ACCOUNT and likely has a sexualized interest in children and depictions of children, and that evidence of child pornography is likely to be found on digital media devices, including mobile and/or portable digital devices found at the SUBJECT PREMISES or on the SUBJECT PERSON.

40.     Based on my training and experience, and that of computer forensic agents that I work and collaborate with on a daily basis, I know that every type and kind of information, data, record, sound or image can exist and be present as electronically stored information on any of a variety of computers, computer systems, digital devices, and other electronic storage media.  I also know that electronic evidence can be moved easily from one digital device to another.  As a result, I believe that electronic evidence may be stored on any digital device present at the SUBJECT PREMISES or on the SUBJECT PERSON.

41.     Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I know that in some cases the items set forth in Attachment B may take the form of files, documents, and other data that is user-generated and found on a digital device.  In other cases, these items may take the form of other types of data - including in some cases data generated automatically by the devices themselves.

42.     Based on my training and experience, and my consultation with computer forensic agents who are familiar with searches of computers, I believe that if digital devices are found in the SUBJECT PREMISES or on the SUBJECT PERSON, there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

a.     Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost.  A great deal of ESI is created, and

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 13
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    stored, moreover, even without a conscious act on the part of the device operator.  For

2    example, files that have been viewed via the Internet are sometimes automatically

3    downloaded into a temporary Internet directory or "cache," without the knowledge of the

4    device user.  The browser often maintains a fixed amount of hard drive space devoted to

5    these files, and the files are only overwritten as they are replaced with more recently

6    viewed Internet pages or if a user takes affirmative steps to delete them.  This ESI may

7    include relevant and significant evidence regarding criminal activities, but also, and just

8    as importantly, may include evidence of the identity of the device user, and when and

9    how the device was used.  Most often, some affirmative action is necessary to delete ESI.

10   And even when such action has been deliberately taken, ESI can often be recovered,

11   months or even years later, using forensic tools.

12              b.       Wholly apart from data created directly (or indirectly) by user-

13   generated files, digital devices - in particular, a computer's internal hard drive - contain

14   electronic evidence of how a digital device has been used, what it has been used for, and

15   who has used it.  This evidence can take the form of operating system configurations,

16   artifacts from operating systems or application operations, file system data structures, and

17   virtual memory "swap" or paging files.  Computer users typically do not erase or delete

18   this evidence, because special software is typically required for that task.  However, it is

19   technically possible for a user to use such specialized software to delete this type of

20   information - and, the use of such special software may itself result in ESI that is relevant

21   to the criminal investigation.  In particular, to properly retrieve and analyze electronically

22   stored (computer) data, and to ensure accuracy and completeness of such data and to

23   prevent loss of the data either from accidental or programmed destruction, it is necessary

24   to conduct a forensic examination of the computers.  To effect such accuracy and

25   completeness, it may also be necessary to analyze not only data storage devices, but also

26   peripheral devices which may be interdependent, the software to operate them, and

27   related instruction manuals containing directions concerning operation of the computer

28   and software.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 14
USAO #2019R01205

## SEARCH AND/OR SEIZURE OF DIGITAL DEVICES

43.     In addition, based on my training and experience and that of computer forensic agents that I work and collaborate with on a daily basis, I know that in most cases it is impossible to successfully conduct a complete, accurate, and reliable search for electronic evidence stored on a digital device during the physical search of a search site for a number of reasons, including but not limited to the following:

a.     Technical Requirements:  Searching digital devices for criminal evidence is a highly technical process requiring specific expertise and a properly controlled environment.  The vast array of digital hardware and software available requires even digital experts to specialize in particular systems and applications, so it is difficult to know before a search which expert is qualified to analyze the particular system(s) and electronic evidence found at a search site.  As a result, it is not always possible to bring to the search site all of the necessary personnel, technical manuals, and specialized equipment to conduct a thorough search of every possible digital device/system present.  In addition, electronic evidence search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since ESI is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment is often essential to ensure its complete and accurate analysis.

b.     Volume of Evidence:  The volume of data stored on many digital devices is typically so large that it is impossible to search for criminal evidence in a reasonable period of time during the execution of the physical search of a search site.  A single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to four terabytes (4,000 gigabytes of data.)  Additionally,

1  this data may be stored in a variety of formats or may be encrypted (several new

2  commercially available operating systems provide for automatic encryption of data upon

3  shutdown of the computer).

4        c.    Search Techniques:  Searching the ESI for the items described in

5  Attachment B may require a range of data analysis techniques.  In some cases, it is

6  possible for agents and analysts to conduct carefully targeted searches that can locate

7  evidence without requiring a time-consuming manual search through unrelated materials

8  that may be commingled with criminal evidence.   In other cases, however, such

9  techniques may not yield the evidence described in the warrant, and law enforcement

10  personnel with appropriate expertise may need to conduct more extensive searches, such

11  as scanning areas of the disk not allocated to listed files, or peruse every file briefly to

12  determine whether it falls within the scope of the warrant.

13      44.    In this particular case, and in order to protect the third party privacy of

14  innocent individuals residing in the residence, the following are search techniques that

15  will be applied:

16      i.    Device use and ownership will be determined through interviews, if

17  possible, and through the identification of user account(s), associated account names, and

18  logons associated with the device.  Determination of whether a password is used to lock a

19  user's profile on the device(s) will assist in knowing who had access to the device or

20  whether the password prevented access.

21      ii.    Use of hash value library searches.

22      iii.    Use of keyword searches, i.e., utilizing key words that are known to be

23  associated with the sharing of child pornography.

24      iv.    Identification of non-default programs that are commonly known to be used

25  for the exchange and viewing of child pornography, such as, eMule, uTorrent, BitTorrent,

26  Ares, Shareaza, Gnutella, etc.

27

28

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 16
USAO #2019R01205

1      v.     Looking for file names indicative of child pornography, such as, PTHC,

2 PTSC, Lolita, 3yo, etc. and file names identified during the undercover download of child

3 pornography.

4      vi.     Viewing of image files and video files.

5      vii.     As indicated above, the search will be limited to evidence of child

6 pornography and will not include looking for personal documents and files that are

7 unrelated to the crime.

8      45.     These search techniques may not all be required or used in a particular

9 order for the identification of digital devices containing items set forth in Attachment B

10 to this Affidavit.  However, these search techniques will be used systematically in an

11 effort to protect the privacy of third parties.  Use of these tools will allow for the quick

12 identification of items authorized to be seized pursuant to Attachment B to this Affidavit

13 and will also assist in the early exclusion of digital devices and/or files which do not fall

14 within the scope of items authorized to be seized pursuant to Attachment B to this

15 Affidavit.

16      46.     In accordance with the information in this Affidavit, law enforcement

17 personnel will execute the search of digital devices seized pursuant to this warrant as

18 follows:

19      a.     Upon securing the search site, the search team will conduct an initial

20 review of any digital devices/systems to determine whether the ESI contained therein can

21 be searched and/or duplicated on site in a reasonable amount of time and without

22 jeopardizing the ability to accurately preserve the data.

23      b.     If, based on their training and experience, and the resources

24 available to them at the search site, the search team determines it is not practical to make

25 an on-site search, or to make an on-site copy of the ESI within a reasonable amount of

26 time and without jeopardizing the ability to accurately preserve the data, then the digital

27 devices will be seized and transported to an appropriate law enforcement laboratory for

28 review and to be forensically copied ("imaged"), as appropriate.

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 17
USAO #2019R01205

1           c.      In order to examine the ESI in a forensically sound manner, law

2    enforcement personnel with appropriate expertise will produce a complete forensic

3    image, if possible and appropriate, of any digital device that is found to contain data or

4    items that fall within the scope of Attachment B of this Affidavit.  In addition,

5    appropriately trained personnel may search for and attempt to recover deleted, hidden, or

6    encrypted data to determine whether the data fall within the list of items to be seized

7    pursuant to the warrant.  In order to search fully for the items identified in the warrant,

8    law enforcement personnel, which may include investigative agents, may then examine

9    all of the data contained in the forensic image/s and/or on the digital devices to view their

10   precise contents and determine whether the data fall within the list of items to be seized

11   pursuant to the warrant.

12          d.      The search techniques that will be used will be only those

13   methodologies, techniques and protocols as may reasonably be expected to find, identify,

14   segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to

15   this Affidavit.

16          e.      If, after conducting its examination, law enforcement personnel

17   determine that any digital device is an instrumentality of the criminal offenses referenced

18   above, the government may retain that device during the pendency of the case as

19   necessary to, among other things, preserve the instrumentality evidence for trial, ensure

20   the chain of custody, and litigate the issue of forfeiture.

21        47.    In order to search for ESI that falls within the list of items to be seized

22   pursuant to Attachment B to this Affidavit, law enforcement personnel will seize and

23   search the following items (heretofore and hereinafter referred to as "digital devices"),

24   subject to the procedures set forth above:

25          a.      Any digital device capable of being used to commit, further, or store

26   evidence of the offense(s) listed above;

27

28

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 18
USAO #2019R01205

1        b.      Any digital device used to facilitate the transmission, creation,

2  display, encoding, or storage of data, including word processing equipment, modems,

3  docking stations, monitors, printers, cameras, encryption devices, and optical scanners;

4        c.      Any magnetic, electronic, or optical storage device capable of

5  storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

6  memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,

7  camera memory cards, media cards, electronic notebooks, and personal digital assistants;

8        d.      Any documentation, operating logs and reference manuals regarding

9  the operation of the digital device, or software;

10        e.      Any applications, utility programs, compilers, interpreters, and other

11  software used to facilitate direct or indirect communication with the device hardware, or

12  ESI to be searched;

13        f.      Any physical keys, encryption devices, dongles and similar physical

14  items that are necessary to gain access to the digital device, or ESI; and

15        g.      Any passwords, password files, test keys, encryption codes or other

16  information necessary to access the digital device or ESI.

17                **GENUINE RISKS OF DESTRUCTION OF EVIDENCE**

18     48.      Any other means of obtaining the necessary evidence to prove the elements

19  of computer/Internet-related crimes, for example, a consent search, could result in an

20  unacceptable risk of the loss/destruction of the evidence sought. If agents pursued a

21  consent-based interview of and/or a consent-based search of digital media belonging to

22  CHRISTOPHER MICHAEL ANDERSON at the SUBJECT PREMISES, he could

23  rightfully refuse to give consent and subsequently destroy all evidence of the crime

24  before agents could return with a search warrant.  Based on my knowledge, training and

25  experience, the only effective means of collecting and preserving the required evidence in

26  this case is through a search warrant.

27

28

AFFIDAVIT OF SPECIAL AGENT GEORGE LONG - 19
USAO #2019R01205

**CONCLUSION**

49.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) and 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) are located at the SUBJECT PREMISES, as more fully described in Attachment A to this Affidavit, as well as on and in any digital devices found therein.  I therefore request that the court issue a warrant authorizing a search of the SUBJECT PREMISES and on the person of CHRISTOPHER MICHAEL ANDERSON for the items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein.

GEORGE LONG,
Affiant, Special Agent
Department of Homeland Security
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 17th day of December, 2019.  In addition to the above, I have also reviewed a copy of the REPOSITORY FILE included as Exhibit 1.  Upon completing my review of Exhibit 1, I placed that copy in an envelope, sealed it, and placed my signature across the seal.

THERESA L. FRICKE
United States Magistrate Judge

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

### Description of the Property to be Searched

a.      The physical address of the SUBJECT PREMISES is 806 S. 39th Street,
Unit B, Tacoma, Washington 98418.  The SUBJECT PREMISES is more fully described
as a unit within a three-unit apartment building situated on the southwest corner of
Yakima Avenue and 39th Street.  The Hong Kong Super Market is located directly across
the street from the apartment building.  The front of the building faces north and is panted
beige with white trim.  The back and sides of the building are covered with a red brick
facade.  Unit B is located near the northwest corner of the building.  It has a brown door
that faces north that has the letter "B" is displayed on it.  The numbers "806" are
displayed on front of the building on wooden pillars on located on the east and west side
of the buildings.



ATTACHMENT A - 1
USAO #2019R01205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



The search is to include all rooms, attics, basements, or other areas located in Unit B, any parking spaces, garages, or storage spaces attached to or specifically assigned to Unit B, as well as any digital device(s) found therein.

ATTACHMENT A - 2
USAO #2019R01205

1
2          Description of Person to be Searched
3  The person to be searched, CHRISTOPHER MICHAEL ANDERSON, is a white male
4  who was born on XX/XX/1979.  He is approximately 5'7" tall and weighs approximately
5  125 pounds.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES and on the person of CHRISTOPHER MICHAEL ANDERSON.

1.      Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2.      Evidence of any associated email accounts, instant message accounts or other communications or digital storage such as cloud accounts.

3.      Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.      All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.      Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.      Any and all address books, names, lists of names, telephone numbers, and addresses of minors;

7.      Any and all diaries, notebooks, notes, non-pornographic pictures of children, and any other records reflecting personal contact or other activities with minors.

8.      Any non-digital recording devices and non-digital media capable of storing images and videos.

ATTACHMENT B - 1
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

9.      Digital devices and/or their components, which include, but are not limited to:

a.      Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above, including but not limited to computers, digital cameras, and smart phones;

b.      Any digital devices used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

c.      Any magnetic, electronic, or optical storage device capable of storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives, camera memory cards, media cards, electronic notebooks, and personal digital assistants;

d.      Any documentation, operating logs and reference manuals regarding the operation of the digital device or software;

e.      Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f.      Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g.      Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

10.     Evidence of who used, owned or controlled any seized digital device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history;

11.     Evidence of malware that would allow others to control any seized digital device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

as evidence of the presence or absence of security software designed to detect malware; as well as evidence of the lack of such malware;

12.     Evidence of the attachment to the digital device(s) of other storage devices or similar containers for electronic evidence;

13.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from a digital device;

14.     Evidence of times the digital device(s) was used;

15.     Any other ESI from the digital device(s) necessary to understand how the digital device was used, the purpose of its use, who used it, and when.

**The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.**

ATTACHMENT B - 3
USAO #2019R01205

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970